JACOBUS L. ALLEN ET AL. *v*. STATE OF MISSISSIPPI.

CRIMINAL LAW. *Homicide. Conviction unsupported by evidence. Arbitrary and inconsistent verdicts.*

A conviction in a homicide case based entirely on circumstantial evidence, no motive for the killing whatever being shown, should be set aside where it is in the face of the positive, uncontradicted testimony of the only eye witness of the killing, especially if there be two defendants and the verdict finds one guilty of murder and the other of manslaughter, without warrant in the evidence for the different findings.

FROM the circuit court of, first district, Carroll county.

HON. J. T. DUNN, Judge.

Allen and another, the appellants, were jointly indicted for the murder of Ann Coker, the wife of appellant, Jefferson Coker, were tried together and convicted, Allen of murder and Coker of manslaughter, and both appealed to the supreme court. The facts are sufficiently stated in the opinion of the court.

*Hughston & McEachern,* for appellants.

The jury were not warranted under the facts of this case in bringing in a verdict of separate and distinct grades of offense as to the two men. The only issue presented by the evidence in this case was whether the appellants were responsible for the death of the deceased. If the state's theory is correct, and they were responsible for the death of deceased, there was no proof whatever before the jury to show the circumstances attending

the death of the deceased, or the manner in which her death was accomplished. This theory discards absolutely the testimony of Jemima Coker, the daughter of the deceased and the only eye witness testifying in the case, and accepts in full the circumstances that were discovered by the witnesses after the death of deceased. This testimony is as strong against one of the appellants as against the other. The only circumstance relied upon for the conviction of appellants, and on which the jury acted, is the fact that the tracks of deceased were seen indicating that she made them while running away from the house and the tracks of two men made while following her, and these tracks were pointed out by appellants to the witnesses as their tracks; tracks of the men, made while returning to the house, were seen, but the woman's tracks could not be traced back to the house; and the further fact that two of the witnesses discovered bruised marks on the neck of the deceased, beginning about midway between the front and back of the neck and extending backward toward the back of the neck and along the shoulders; and the further fact of an autopsy held by two physicians seventeen days after the burial of the deceased, and the opinion of said physicians based upon their examination of said body at said time. These are all of the circumstances tending to show the guilt of the appellants, aside from the fact that the appellants were present at the time of the death of the deceased. There is no fact or circumstance that will inculpate one of the appellants more than the other. The evidence applies equally against both, and no mitigating circumstances are shown whereby the offense of one is less than the other; such being the case, one could not have been guilty of murder and the other only of manslaughter. We admit that as a general rule a crime may be committed jointly by two or more defendants and one be guilty of a greater and the other of a lesser degree, and that the jury may so find, but that is when the facts and the circumstances are detailed to the jury so that the jury can pass upon

the conduct of each and the surroundings of each and judge of the motives that prompted each, but in a case like this where there are no detailed circumstances of the death, where the evidence is purely and simply circumstantial, and the question presented is whether the defendants were responsible for the death, and where those circumstances proven apply equally to both of defendants, there can be no question as to the rights of the jury and they cannot bring in separate and distinct verdicts and findings on these facts.    *Davis* v. *State,* 75 Miss., 637 (s.c., 23 South. Rep., 770, 941); Bishop on Criminal Procedure (3d ed.), secs. 1036, 1037, and note.

There is nothing in this record to authorize a jury in finding appellants, or either of them, guilty of manslaughter.    There is no evidence tending to reduce the grade of crime, if crime had been committed.    The only question that the jury had to determine was whether appellants were guilty of acts which constituted a crime; then when the court instructed the jury that they might find the appellants guilty of manslaughter, it compromised the rights of appellants to have the jury to determine this single question, and it caused the jury to take license from this instruction to find a verdict upon testimony upon which they would shrink from rendering a verdict of guilty with higher penalties attached.    If the evidence in this case does not warrant the conviction of appellant, Coker, on the charge of murder, it of course does not warrant his conviction of manslaughter, for the question in this case is not as to the grade of the offense, but as to the connection of the accused with it, if any had been committed, and the instruction as to the grade of the offense is misleading and harmful, and the court therefore erred in granting the instruction which authorized the jury under this state of facts to bring in a verdict of manslaughter.    *Virgil* v. *State,* 63 Miss., 317.

Besides, the evidence absolutely fails to show that appellants were guilty of any crime at all, even taking the testimony intro-

duced by the state; taking all the circumstances upon which it relied for conviction, there is no fact or circumstance proven that is inconsistent with the innocence of appellants.

*R. V. Fletcher,* assistant attorney-general, for appellee.

The only complaints are that the verdict is not supported by the testimony, and that the jury acted improperly in finding one defendant guilty of murder and the other guilty of manslaughter.

As to the last named proposition, it is sufficient to say that if the evidence warrants a conviction of murder, the fortunate recipient of the merciful finding of the jury has no good reason to complain.

The death of this woman occurred about four o'clock in the morning, before daylight. There were no eye witnesses to the affair, except a little daughter of one of the defendants. The state's evidence was circumstantial to a very large degree. The testimony of Mrs. Alford and her son shows that they lived very near to the home of the deceased and were awakened by the screams of a woman or child. A few minutes after Allen appeared and stated that Mrs. Coker had committed suicide by swallowing poison. The woman was dead when these neighbors reached the house. It was further shown that both defendants insisted on an immediate interment and that only through the intercession of the neighbors was this hasty burial prevented. It appeared, too, that there were bruises or black marks on the back of the woman's neck, and that these marks extended toward her shoulder. The ground around was examined and the track of a barefooted woman was found going one way only, whereas defendants stated and defendants' witnesses swore that the woman had gone out, returned and procured the bottle, and gone away again, and returned part of the way, when she was met by defendants. The tracks of the two men were seen both going and returning.

The *post mortem* examination showed that all the vital organs were in a perfectly normal condition—the heart and its valves were sound, the lungs and stomach were unaffected. Both physicians stated that the extravasation in the head and neck showed conclusively that death had been caused by strangulation. If value is to be attached to expert testimony, the jury had ample warrant in finding that death resulted from violence. These medical men state that no death from natural causes would have produced the conditions which they found present in the head and neck of the unfortunate woman.

The chemical expert, Dr. Hand, made an examination and found no traces of strychnine in any of the organs of the body. It is shown satisfactorily that it was extremely improbable that all the strychnine could have been immediately absorbed before death so that no trace would remain. It is shown, too, that death by strychnine poisoning could not result in the short time that transpired between the alleged taking of the dose and the time of the death. The shortest known period was stated as one hour, and the average period was stated as two and a half hours. If this testimony is to be credited, the death of Mrs. Coker could not have been caused in the way described by defendants' witness.

The defendants seem to base their defense partly on the suicide theory and partly on the theory of death from heart failure. But the suicide theory is overthrown by the short time between the taking of the poison and the death; by the fact that no poison was in the system; by the fact that all the organs were in a healthy condition. Their theory of death from heart failure is destroyed by the perfectly normal condition of the heart and its valves. No great importance can be attached to the "spells" which the witnesses describe. They were, very probably, manifestations of an hysterical mood, which are often perfectly consistent with physical health.

The jury heard the testimony, weighed and balanced it, and their finding cannot be said to so shock the conscience that this court can find warrant to interfere.

Argued orally by *E. V. Hughston,* for appellants, and by *R. V. Fletcher,* for the appellee.

WHITFIELD, C. J., delivered the opinion of the court.

We have given this record repeated and careful examination, with the result that we find it impossible to affirm this judgment on the case made by this record. The well-settled principles applicable to circumstantial evidence forbid its affirmance. It is perhaps the most unaccountable case that has ever been before this court. There is absolutely not only no adequate motive, but no motive whatever, shown why either man should have killed this woman. The testimony of the little girl, which makes a clear case for both defendants, seems to have been arbitrarily rejected by the jury, although she was not impeached in any mode known to the law. The mother of the dead wife herself testifies in the most positive and emphatic manner that the relations between the husband and wife were of the most affectionate character, which testimony excludes a possible desire on the part of the wife to escape cruel treatment at the hands of her husband. It is shown that she had once said that she would kill herself, but why is not hinted at. It is very clearly shown that she had been thrown from a horse some ten years previous to her death, and, hitting the ground with her head first, was dragged some distance in that condition; that she had from that time on until within the last two or three years before her death been subject to the most violent fits or convulsions; and her family physician testified that her heart was materially affected, and she had been treated by him for many years after the injury. The most damaging thing against the defendants is the statement of Allen that she had killed

herself with strychnine. The record does not support this view, as we think. The discolorations down the spinal column and on the back of the neck are accounted for by the family physician, upon the theory that she was found lying on her back on the bed, and that this discoloration was due solely to the settling of the blood in the back and back of the neck. It is absolutely impossible, with any degree of satisfaction, to find a motive why either of the men should have killed this woman; but the evidence does show that her death may reasonably have been ascribed to heart disease, as expressly testified to by Dr. Holden, the family physician.

Another most extraordinary thing is that the jury found Allen guilty of murder, and yet sentenced him to only life imprisonment in the penitentiary, whilst at the same time, on identically the same record in every respect, finding the husband, Coker, guilty of manslaughter only, and the judge only sentenced him to three years' imprisonment in the penitentiary. There is absolutely not the slightest warrant in the record for any distinction in these two cases, and none should have been made by the jury on this record. Obviously, if guilty on this record, both men should have been found guilty and sentenced to death. It is not a case, in that view, calling for the slightest mercy; if guilty, it was an atrocious and diabolical murder, and the husband, though not on the record capable of being visited with severer punishment than death, would yet in a moral point of view be far more guilty than Allen, in no wise related to the dead woman. It is impossible to resist the suggestion, looking over the whole record, the verdict, and the sentences of the two men, that the difference made by the jury between them, as well as their conviction at all, were due to something not in evidence in this record. It is impossible to affirm this conviction, resting on purely circumstantial evidence, without the slightest motive shown, and in the face of the

positive, unimpeached testimony of the only eye witness, the daughter of the dead woman.

*. The judgment is reversed, and the cause remanded for a new trial.*